F I L E D
CLERK OF COURT

2025 JUL 28 PM 3: 49

SUPERIOR COURT
OF GUAM

## IN THE SUPERIOR COURT OF GUAM

| | | |
|---|---|---|
| PEOPLE OF GUAM, | ) | CRIMINAL CASE NO. **CF0208-24** |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| | ) | DECISION AND ORDER RE. |
| **JOHN PAUL FEJERANG MESA,** | ) | DEFENDANT'S MOTION TO |
| DOB: 07/11/1982 | ) | SUPPRESS |
| | ) | |
| Defendant. | ) | |
| | ) | |

### INTRODUCTION

This matter came before the Honorable Maria T. Cenzon upon Defendant John Paul Fejerang Mesa's ("Defendant or John Paul Mesa) Motion to Suppress ("Motion or Motion to Suppress"). The People of Guam ("the People) are represented by Assistant Attorney General Valerie A. Nuesa. Defendant is represented by Alternate Public Defender Tyler R. Scott. Defendant and counsels were present at the suppression hearing on April 28, 2025. Following the hearing, the Court took the matter under advisement pursuant to CVR 7.1(e)(6)(D) of the LOCAL RULES OF THE SUPERIOR COURT OF GUAM and Administrative Rule No. 06-001. After considering the pleadings on file and having heard oral arguments, and after reviewing the applicable statutes and case law, the Court now issues this Decision and Order GRANTING Defendant's Motion to Suppress.

## PROCEDURAL AND FACTUAL BACKGROUND

Defendant is charged with Possession of a Schedule II Controlled Substance (As a 3rd Degree Felony). See Indictment. (April 16, 2024). The charges in the Indictment stem from a traffic stop that occurred on or about March 29, 2024, at approximately 11:00 p.m. Magistrate's Compl. (March 30, 2024).

Officer Guardian conducted a routine traffic stop on a white sedan that did not have its headlights turned on. Magistrate's Compl. The white sedan then pulled into the Dededo Payless parking lot. Def.'s Mot. Compel at 2 (May 31, 2024). Officer Guardian conducted a call out of the license plate and was informed that the sedan had expired registration and insurance. *Id.* After meeting the driver of the vehicle, Kendrick Benavente, Officer Guardian requested his driver's license and registration. *Id.* Benavente informed Officer Guardian he did not have a driver's license or registration. *Id.* Officer Guardian asked the front passenger of the vehicle, John Paul Mesa, for a driver's license, which he was able to provide. *Id.* Officer Guardian then asked to see the vehicle's insurance and shone a flashlight into the interior of the car. *Id.* Officer Guardian observed a small plastic baggie underneath a vehicle's key fob on the vehicle's center console. *Id.* According to the motions filed by Defendant and the people, Officer Guardian alleges the baggie appeared to contain a white crystallized substance. *Id.,* People's Mot. Compel at 2 (April 9, 2025). Defendant's motion claims that Officer Guardian then asked Benavente to pick up the baggie, which he complied with. Def.'s Mot. at 2. The people's motion instead claims that Officer Guardian gestured towards the baggie and Benavente picked up the bag and held it out on his own. People's Mot. at 2-3. Benavente and Defendant were asked to step out of the vehicle while Officer Guardian confiscated the baggie. Def.'s Mot. at 2. The contents of the baggie tested presumptive positive for approximately 0.41 grams of methamphetamine. *Id.* Benavente and Defendant both denied

owning the baggie. After placing Benavente and Defendant under arrest, Officer Guardian searched them incident to arrest. *Id.* He found a wallet inside of Defendant's front pocket. People's Mot. at 3. Inside the wallet was a small plastic baggie that contained a white crystallized substance. *Id.* That substance tested presumptive positive for approximately 1 gram of methamphetamine. *Id.*

On May 31, 2024, Defendant filed a motion to suppress evidence, arguing that the evidence was seized in violation of his Fourth Amendment rights. Def.'s Mot. at 3. The People filed an opposition to the motion on April 9, 2025. [1] People's Mot. at 1. Defendant replied to the People's opposition on April 14, 2025. Oral argument on the motion was heard on April 28, 2025. Neither party submitted witness lists, as required under CR 1.1(b)(3). The People failed to produce any witnesses at the hearing, although the People indicated that GPD Officer Jorem Guardian had been previously served with a Subpoena to appear for the hearing. *Hrg. on Def.'s Mot. to Suppress on 4/28/2025* at 2:11:33 PM (Apr. 28, 2025). [2] The defendant submitted three exhibits of photographs of the vehicle's interior at the hearing without objection by the People.

Through his motion, Defendant is requesting the suppression of all physical evidence and statements, arguing the search and seizure of the Defendant was unconstitutional. The Defendant claims that the incriminating character of the small baggie was not immediately apparent to Officer Guardian until he requested that Benavente pick it up. Def.'s Mot. at 6. Therefore, Defendant asserts there was no probable cause to arrest and search his person. *Id* at 7. The People argue that

---

[1] The People's Opposition was originally due by June 14, 2024. *Ntc. of Mot.* (May 31, 2024). The Court issued a Briefing Scheduling Order modifying the People's due date to file an Opposition by September 5, 2024, which was subsequently extended to October 24, 2024. *Briefing Scheduling Order* (Jul. 16, 2024); *Amended Briefing Scheduling Order* (Sep. 30, 2024).

[2] During the hearing, which was scheduled to commence at 2:00 pm on April 28, 2025, the Court allowed the People to contact Officer Guardian to determine his arrival time at Court for the hearing. The People informed the Court that the witness would arrive at the Court "in the next 40 minutes." *Id.* at 2:29:55 PM. As the 2 p.m. hearing had already been delayed by 30 minutes, the Court proceeded with the hearing. At no time during the hearing, which ended at 2:53 PM, did the People's witness appear.

the incriminating character of the baggie was immediately apparent and that Officer Guardian could see a white, crystalline substance before the baggie was manipulated. People's Mot. at 5. As a result, the People contend the arrest and subsequent search of the Defendant was valid. *Id* at 5.

## DISCUSSION

The Fourth Amendment to the United States Constitution provides "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, [and] shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. The Fourth Amendment protects against unreasonable searches and seizures and is made applicable to Guam by 48 U.S.C.A §1421b(c) of the Organic Act of Guam. *People v. Yerten*, 2021 Guam 8 ¶ 17 (citing *People v. Johnson*, 1997 Guam 9 ¶ 4) (internal citations omitted). Warrantless searches are "presumed to be unreasonable." *People v. Quintanilla*, 2020 Guam 8 ¶ 27. When there is a warrantless search and seizure, the People have the burden of proof to prove that the search and seizure was valid. *People v. Calhoun*, 2014 Guam 26 ¶ 9 (quoting *People v. Santos*, 1999 Guam 1 ¶ 51). A warrantless search or seizure is only valid "if an exception to the warrant requirement applies". *Id.*

**I. The initial investigatory stop of the vehicle was lawful and based upon reasonable suspicion Benavente was committing a traffic violation.**

A traffic stop is valid if police have a reasonable suspicion that a traffic violation occurred. *People v. Chargualaf*, 2001 Guam 1 ¶ 17. "Reasonable suspicion entails "some minimal level of objective justification" for making a stop, but considerably less than the level of suspicion required for probable cause." *People v. Mansapit*, 2016 Guam 30 ¶ 13. (citing *United States v. Sokolow*, 490 U.S. 1, 7). Magistrate's Compl.

The People argue that Defendant was not seized during the traffic stop because he was only a passenger in the vehicle. However, when a vehicle is stopped by the police, everyone inside of it, including passengers, is seized. *Brendlin v. California*, 551 U.S. 249, 255 (2007). "Although stopping a car and detaining its occupants constitute a seizure within the meaning of the Fourth Amendment, the governmental interest in investigating an officer's reasonable suspicion, based on specific and articulable facts, may outweigh the Fourth Amendment interest of the driver and passengers in remaining secure from the intrusion." *United States v. Hensley*, 469 U.S. 221, 226 (1985).

Here, based upon information provided to the Court which was not controverted by Defendant, Officer Guardian had reasonable suspicion to perform a traffic stop on Benavente and Defendant. Officer Guardian observed that the car was driving at approximately 11:00 p.m. with no headlights on, which is a traffic violation. Under the totality of the circumstances analysis, driving without headlights at 11:00 p.m. is sufficient to raise reasonable suspicion and justify stopping the vehicle. Although Benavente and Defendant were briefly seized, the seizure was justified by the reasonable suspicion that Benavente, as the driver, was committing a traffic violation.

**II. The plain view doctrine does not apply to the first baggie of methamphetamine because its incriminating character was not immediately apparent.**

According to the plain view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *People v. Camacho*, 2004 Guam 6 ¶ 20 (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)). The Guam Supreme Court has adopted the Dickerson and Horton three-part test to evaluate whether the plain view doctrine applies. *Id.*

1. [T]he officer must "arriv[e] at the place from which the evidence could be plainly viewed' without violating the Fourth Amendment,

2. the evidence must be in 'plain view' and its 'incriminating character must also be immediately apparent,' and

3. the officer 'must also have a lawful right of access to the object itself. '

*Id.* (quoting *Horton v. California*, 496 U.S. 128, 136-37 (1990)).

Here, Officer Guardian lawfully arrived where he could view the possible evidence. As addressed above, the officer had executed a valid traffic stop on Benavente and Defendant, so the first prong is satisfied.

As for the second part of the test, the incriminating character of the evidence was not immediately apparent. Officer Guardian did not see the baggie until he illuminated it with his flashlight. People's Mot. at 2. The baggie was directly beneath a vehicle's key fob on the center console. *Id.* There are conflicting statements about whether it was immediately clear that the baggie contained a white crystalline substance: The People submit that the Officer could immediately see the contents of the baggie and recognized it as methamphetamine. People's Mot. at 2. Defendant submits that the baggie and amount of drugs found in the baggie, 0.41 grams, was too small for the officer to have seen underneath the key fob. Def.'s Mot. at 6. They contend that the officer could have only seen the plastic part of the bag and not the actual contents. *Id.*

There are also conflicting statements about whether Officer Guardian directed Benavente to lift up the baggie, revealing its incriminating character. The People submit that the officer "made both Benavente and Defendant aware of what he was looking at" and then Benavente lifted up the baggie on his own accord. People's Mot. at 5. Defendant submits that the officer "asked Benavente to pick up the baggie" and Benavente complied. Def.'s Mot. at 2.

"The incriminating nature of an item is immediately apparent 'where the officer ha[s] probable cause to associate the property with criminal activity.'" *People v. Camacho*, 2004 Guam 6 ¶25 (alteration in the original) (quoting United States v. Hudson, 100 F. ad 1409, 1420 (9th Cir. 1996)). This prong was satisfied in *Camacho*, where the officer recognized a white powdery substance inside plastic straws as methamphetamine. *Id.* There, the officer's recognition of the drugs gave probable cause to associate the contraband with criminal activity. *Id.* However, in this case, the People have not proven whether the officer could see the drugs in the plastic baggie before it was manipulated. Until the bag was lifted and its contents revealed, there was no probable cause to believe a plastic baggie was related to criminal activity. Upon considering the limited evidence relating to this encounter, and without Officer Guardian's testimony, this Court finds that the baggie's incriminating character was not immediately apparent.

Similar to the first part of the test, the third prong is satisfied because the initial stop of the vehicle was lawful. Officer Guardian conducted a valid traffic stop on Benavente and Defendant, so he had lawful access to the interior of the vehicle to seize the baggie. See *United States v. Hall*, 974 F.2d 1201 (9th Cir. 1992).

In sum, the seizure of the baggie fails on the second element of the plain view test. The plain view doctrine does not apply to the seizure of the baggie because, based upon the evidence produced during the suppression hearing – or lack thereof – its incriminating character was not immediately apparent when Officer Guardian first viewed it. All three prongs of the test must be fulfilled in order for the plain view doctrine to apply to a warrantless search, so it is inapplicable to the seizure of the first baggie. *People v. Camacho*, 2004 Guam 6 ¶28.

//

//

**III. The subsequent arrest and search of Defendant was unlawful; therefore, the evidence derived from that arrest is excluded.**

Police may place an individual under arrest without a warrant when there is probable cause to believe a crime has been or will be committed. *Devenpeck v. Alford*, 543, 593 U.S. 146 (2004). Probable cause is based on the facts known by the officer at the time of the arrest. *Id*. The People do not address whether the arrest was lawful. People's Mot. at 5. Here, the officer arrested Benavente and Defendant after seizing the baggie that was underneath the key fob. *Id*. As discussed above, this was an invalid seizure because the incriminating character of the baggie was not immediately apparent based on the evidence produced during the hearing. The illegally seized baggie cannot establish probable cause for the subsequent arrest of Benavente and Defendant.

Evidence obtained as the result of an illegal search and seizure must be suppressed. *People v. Cundiff*, 2006 Guam 12 ¶ 41. However, before determining that the evidence is "fruit of the poisonous tree," the Court must evaluate "whether the challenged evidence was 'come at by exploitation of [the initial] illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Segura v. U.S.*, 468 U.S. 796, 804 (1984), quoting *Wong Sun v. United States*, 371 U.S. 471 (1963). The People do not submit any intervening events that break the causal chain between the illegal seizure of the baggie from the vehicle to the arrest and search of the Defendant. The warrantless seizure of the baggie from the center console of the vehicle taints the later seizure and search of the Defendant. As a result, the baggie found in Defendant's wallet is excludable and must be suppressed.

**CONCLUSION**

For the reasons stated above, the Court GRANTS Defendant's Motion to Suppress. While GPD's initial traffic stop was constitutional, the first baggie's incriminating character was not immediately apparent. Therefore, the plain view doctrine does not apply, and the following arrest,

search, and seizure was unconstitutional. The People have not overcome the presumption of unreasonableness for warrantless searches. Physical evidence seized during the search is, therefore, inadmissible.

The Court shall issue a Criminal Trial Scheduling Order under separate cover.

**SO ORDERED** this 28th day of July, 2025.

_____
HONORABLE MARIA T. CENZON
Judge, Superior Court of Guam

SERVICE VIA EMAIL
I acknowledge that an electronic copy of the original was e-mailed to

OAG & APD
_____
Date: 7/28/25 Time: 3:53
Remita M. Lindlau
_____
Deputy Clerk, Superior Court of Guam